Thank you, Your Honor. May it please the court and counsel. I'm John Runft. I represent Judge Bradbury, the plaintiff appellant in this case. In this case, sitting judge, Idaho State Judge Bradbury, seeks declaratory relief under 42 U.S.C. 1983 against the justices of the Idaho Supreme Court, accounts for violation of his right to due process. This case arose out of proceedings before the Idaho Judicial Council regarding whether Judge Bradbury met the county resident's requirement to hold office. The statute Judge Bradbury claims, of course, is vague. The court has, I'm sure, gone over this. And in those proceedings, the council renewed the proceedings on grounds of new information and inquiries. The attorney for Judge Bradbury in those proceedings requested discovery of what this new information and inquiries were. The request was denied on the grounds that they were confidential. No reason for the confidentiality was ever given. That's in the transcript. This moved on to the Supreme Court for review. And in the Supreme Court, the request for this discovery was denied. Now, Judge Bradbury claims that the entire proceeding was exacerbated by extrajudicial communications, beginning with the fact that the chief justice of the Idaho Supreme Court serves as the chairman of the Judicial Council. Before you get to all the potential merits of Judge Bradbury's claims, he has, we have to address the threshold question of younger, which was the basis for dismissal here. And if you look at the history in the federal courts, particularly in cases like this, very often the younger abstention is the result. Why was it error for the district court to do that here? The younger abstention doctrine does have an exception. And that exception deals essentially with, to put it in a nutshell, with extraordinary circumstances. And we believe that these are indeed extraordinary circumstances with the cascade of increasing violations of Judge Bradbury's civil rights, of his due process rights. It is a compounding that's so serious that it constitutes the kind of, the sort of exception to the... But every person who comes in here with a state court problem says the same thing. I'm sure they do. And so then it's like the cart before the horse. You got to, you know, you can't decide the merits before. It's extraordinary circumstance, Mr. Rumpf, that Chief Judge Eisman was the prosecuting attorney and the judge in this case. Is that the nut of it as to whether Mr. Bradbury really lived in Greenville or didn't live in Greenville? There were three issues that make this extraordinary. One, of course, was the bigness of the statute to begin with. And you saw in the opinion of the Idaho Supreme Court, one of the justices... Are you so presumptuous as to say that actually resided is vague as compared to resided? The law of Idaho dealing with residents... I'm just kidding. I'm pulling your chain. I agree. Your Honor, the humor went over my head. What's the second reason? Actually, the question of vagueness, the issue of the failure to allow discovery, and, of course, on that issue, we cite the Ohio Bell Telephone Company case, 301 U.S. 292. Is there any claim that your client has with regard to the way in which he was or has been treated that if it rose to a constitutional violation, could not be reviewed by the United States Supreme Court on writ of certiorari from the Supreme Court of Idaho? As you know, we did file a motion for cert, petition for cert, which was denied.  That is what I asked. But the answer would be no. There would be no reason why it couldn't be. We felt that our petition for cert was justified, and we fell in that one-and-a-half-percent rule. It was denied. And as to the actual situation, Judge Bradbury's term will end this year? Is that correct? We're coming now to the mootness issue, which the Court asked us to address. But before I address that, may I finish my answer to your question? What's the third issue? Yes, the third. The third is the extrajudicial statements that have been made, and they consist of extrajudicial communications that begin with the fact that Judge Bradbury set on the Judicial Council. There's an affidavit in the record by Chief Justice Eisman as to what he did, but the affidavit is more noteworthy for what is not said, for it does not deny that Justice Eisman sat throughout the entire prosecutorial portion of the proceedings of the Idaho Judicial Council, in which he sat and at least heard if he didn't participate. So when it came before him as a judge, he was sitting as a prosecutorial party, if you will, on the bench judging the case. Secondly, motions were made at the Supreme Court level to compel the Judicial Council to remand back, to compel the Judicial Council to grant discovery. Those motions were heard by Justice Eisman with the other justices on this very issue of due process. He was sitting on those discussions. Eisman recused, though, right? Eisman recused after the case was submitted, but before the decision came down. Right. And in his recusal, which I bring up now, it constitutes a third extrajudicial communication in which he states on the record, and I'm holding the recusal here in my hand, the only reason for obtaining that information would be retaliation, which refers to Judge Bradbury. This is an extremely gross case of extrajudicial communication. The court was fragmented, as you know. Three justices made the decision. One judge, the pro tem judge, former member of the Idaho Supreme Court, dissented. And it is those type of circumstances, and I certainly appreciate that every state court case that comes before you, they come before you the same. And they say the exact same thing, and most of them have more extraordinary things. There's bribing of judges and all kinds of things. And here you have a vagueness of a statute, which, of course, is something the state court ought to be able to figure out instead of us. You have a failure of discovery. So let's move on. Your Honor, if I just may make one comment. I'm just having trouble understanding why this shouldn't stay in the state court. The state court action, of course, is over. Right. And we believe that there could be a, we seek a remedy to go back to the Idaho Supreme Court and have that discovery. This case, this conduct, clearly. What do you want in the end? What do you want? He's in office now. He gets to stay in office until the end of the year, right? Judge Bradbury's interest in this case, I think you're going to the issue of mootness perhaps now. And what you asked us to address. His interests fall under the cases, the mootness cases, the exception to the doctrine of significant. We believe this is a significant constitutional issue and constitutes an exception to the Article III mootness doctrine, the requirement that the case must be capable of repetition, yet evading review. Again, the cases show if there is an interest dealing in his professional reputation, he may run again. He just completed a campaign, incidentally, this last session for the Supreme Court again. Oh, he ran for the Supreme Court. He did. Twice. And lost. Well, very close, yes, but he lost. But he's exercising his right. He thinks there's something inherently wrong with the judicial discipline system and the way in which it treats people in his circumstance. And at least once, maybe twice, he's raised that in the court of public opinion and run for the Supreme Court. And if he were successful, he could have changed all this, right? I would respectfully disagree. I think that part of the political side of this is that he suffered under the exegesis of the press against him regarding the claims that came out of the decision of the Supreme Court, the results of the claims on his reputation. Is there any reason he can't pursue those in state court? I mean, does he want damages? No. Money damages. He only wants declaratory relief. Okay, well. I'd like to have the decision in this case reviewed and sent back to the Idaho Supreme Court. The decision in this case, we don't send things to the Idaho Supreme Court unless we certify a question. And so, you know, has he filed a judicial misconduct complaint? As a matter of fact, he has. Okay. So he's taken that remedy. And let's just say his case is not moot because he's still in office, but it still begs the question of why this court as opposed to the state court shouldn't process his claim. The significant issue here goes to the impugning of his reputation, the impugning of his judicial ability that has occurred in this matter, and more importantly, perhaps, the well-known ex-party communications with the other members of the Idaho Supreme Court. So why shouldn't that be something for the Idaho trial court to figure out first? Then they'll figure out what the facts are, and maybe there is a problem. We don't know. But the Idaho state court can figure that out. Yes, but wouldn't a plaintiff have a right before this court to have declaratory relief for the violation of his due process rights? It's absolutely impermissible by any standard of Western justice to allow this sort of ex-party communication to go on. I mean, not only, as I say, did the Chief Justice sit on the court when he was the Chairman of the Judicial Council, but he communicated regarding the very issues that were before the court and before the Judicial Council regarding due process. Lastly, when he refused himself, he impugned Judge Eisenman, saying that his only reason for doing all this was for retaliation. Lord knows what that means. I mean, that couldn't be brought before an Idaho court? Everything you've said? Are you claiming the Idaho courts are so dominated by Chief Justice Eisenman that they are corrupt in the sense of Caperton, that you can't get a fair trial in Idaho anymore than you could get a fair trial in West Virginia? I would not say that the court is corrupt, no, I would not. I'm saying, though, that we do have a serious violation of the plaintiff's appellant's due process rights and that these do affect his ability to pursue any future elections he may try again. But you see, even if we agreed with you to say, okay, we can jump over Younger, we have got this other problem, and that's the claim preclusion with respect to these issues already having been litigated. So what do we do about that? You say they have been litigated? Right. Aren't they identical to the ones that were raised in the Idaho Supreme Court case? What's different? Not the ex officio communication. I mean, Justice Eisenman simply recused himself and then continued with his ex officio communication, as you find here in his recusal. The protected property interest here- When you say ex officio, are you talking about ex parte communication? Ex parte communication, I'm sorry. How can something be ex parte if it's filed publicly? It's ex parte because it is not part of the record. I mean, if the judge is saying the only reason for obtaining this information for retaliation, that's not in a record before the court. If the judge is sitting with other judges in the sessions of the Supreme Court adjudicating motions before the Supreme Court, dealing with conduct that was concerned with- Sorry, go ahead. Oh, I thought you asked a question. All right. Well, your time has expired. We'll hear from Idaho. Thank you. May it please the Court, Counsel. My name is Michael Gilmore. I'm a Deputy Attorney General representing the members of the Idaho Supreme Court and a pro tem member who is the fifth member of the panel. No matter what happens, Judge Bradbury can't get any relief. We think the Younger Doctrine is properly applied below, but if we're wrong, there's still other doctrines that would preclude relief. Claim and issue preclusion or most likely mootness because by the time this case is decided by this court and remanded to the district court, Judge Bradbury's term in office will be over. So there's really no path to relief. But we can't kind of go down the road. At this point, he's still in office. He is still in office. And if we were to decide this in relatively short order, he'd still have some potentially live claims, would he? He has told the Idaho Supreme Court he's now living in Grangeville. He's in Idaho County. There's no live issue. Only if he decided that he's not required to comply with the statute and said that he was not going to comply with it. He's living in Greenville now? Well, that's what he is. He's living in Idaho County now. Grangeville is the county seat. Well, but his claim, I don't think at this point, that's kind of been decided and he lives where he lives. I thought his claim, as I understood his lawyer, is he basically has constitutional claims and he wants a declaration, for example, that the recusal statement is an improper ex parte under the Idaho canon's judicial conduct. And he wants various other declarations, which he wants the residency statute declared unconstitutional. I guess that's one of them. But some of them relate to his due process violations. So why are those moved? There's no ongoing proceeding in which those can be adjudicated. The Idaho Supreme Court proceeded to a final judgment. There was a certiorari petition. The certiorari petition was denied. There is no process ongoing in which he can seek injunctive relief because his complaint was for injunctive relief and the ongoing state proceeding. If I may address Younger to begin, because I really think that's the key to this case, the three Younger elements are an ongoing state proceeding, which was happening here, implicating an important state interest, and again the judicial counsel and discipline of the judiciary is a very important state interest. And finally, state proceedings provide an adequate opportunity to raise federal issues. And all of those could have been raised either before the Idaho Supreme Court directly or on petition for certiorari, the United States Supreme Court. And the Idaho Supreme Court explicitly addressed some of the issues. It addressed the vagueness of the statute in its decision. It addressed the recusal issues in its decision. And it addressed the discovery issues in its decision. So there was an opportunity to raise all of those issues. All of the Younger elements were met. I don't understand Judge Bradbury to be arguing that those three elements of Younger were not met, which apply when you're looking for injunctive relief. I understand him to be arguing there were extraordinary circumstances. In his extraordinary circumstances, which he laid out, relate to, I think, the vagueness of the statute, the discovery, and the extrajudicial communications. Yes. Let's start with discovery. To the best of my knowledge, I can find no cases holding their constitutional right to discovery in administrative hearings. In fact, there are U.S. Supreme Court cases saying there's no constitutional right to discovery in criminal processes. You do have a right to be given knowledge of exculpatory evidence, but there is no general right of discovery either in criminal or civil or administrative cases. The only case I could find in the Ninth Circuit that talked about that was a case called Thomas v. Bible, which was 896 F. Second 555, a 1990 case that was not a published decision, but cited published decisions of other circuits to that effect. And that has to do with no constitutional rights to discovery in a state administrative proceeding. As far as the dual role of the Chief Justice, that is theoretical in this case. Chief Justice Eisenman's affidavit, and I'm quoting from page 205 of the excerpts of record, explained that the decision by judicial counsel to initiate this proceeding, the second proceeding, the one that led to the actual hearing on whether Judge Bradbury resided in Idaho County, was initiated before he became Chief Justice. And Idaho Chief Justice is elected to a four-year term by the members of the court, so people come in and out of the position of Chief Justice. It started before he was elected. And then he explains in his affidavit he did not participate in the evidentiary hearing because he was undergoing chemotherapy for cancer. He was doing something else. He wasn't there when judicial counsel held the hearing. So he wasn't there when the prosecutorial decision was made, and he wasn't there when the hearing was held. So, yes, there was an empty chair on judicial counsel that he could have filled, but he wasn't there at any time. And then he continues his affidavit saying that the only thing he knows about judicial counsel's decisions was what is in the record that was transmitted to the Idaho Supreme Court. So, again, there is no basis for saying that we have anything even close to a Caperton type of situation. So I don't think this rises to the... In this last election, could he have run for re-election for his post, but instead he ran for Supreme Court? Yes, Judge Bradbury ran against Justice Burdick, who is one of the three other justices who are defendants here, as well as the Justice Pro Tem, Mr. Kidwell. Yes, and he had run also in 2008. That against Justice Horton. Justice Horton disqualified himself from hearing this case. But in terms of his trial court position, by choosing to run for the Supreme Court, he forfeited the right to run for that, and so it just will expire by its own term, is that correct? Yes, Idaho has a statute that says you cannot appear on the ballot for two different offices, so you're forced to elect. As a district judge, you couldn't run for re-election and run for Supreme Court both. So, yes, his term will expire the first Monday in January of 2011. To get back to the extraordinary circumstances element, there's simply nothing extraordinary here. Justice Eisenman had no part in the prior proceedings before judicial counsel. The fact that Justice Eisenman was caucusing with the other justices of the Idaho Supreme Court and handling motions again, there's nothing extraordinary about that. Justice Eisenman has told us the only thing he knows about the case is what he found out in the record that was transmitted to the Idaho Supreme Court. Lack of discovery is not an extraordinary circumstance. And as far as the statute actually resides, there is case law. The Sixth Circuit collected all the exceptions to Younger in a nice footnote, and it says something like, here are the exceptions. The state proceeding is motivated by a desire to harass or is conducted in bad faith. There's no evidence of that. There is an extraordinarily pressing need for immediate equitable relief. And, again, we don't have those circumstances. And the challenge provisions flagrantly and patently violate even express constitutional provisions. We don't have anything like that. I think if we were to take the bigness argument, that would be extraordinarily expanding the exceptions to Younger because how many criminal defendants argue at one time or another statutes unconstitutionally vague? If that were a sufficient Younger hurdle, we could probably move a lot of state prosecutions in the federal court right off the bat because once a criminal defendant figures out that's the way to stall things or to get in the federal court, that's really opening the doors. I have about five minutes left, but I don't think I'll need the whole five minutes. You can always quit early. We don't even have a rule against that. Yep. So I'll do my best to do that and wrap it up in 30 seconds. I think Younger is clear that even if Younger were not, you still have the issues of claim and issue preclusion because this case went to a final judgment before it got out of the Supreme Court. There was a petition for certiorari, and certiorari was denied. And most likely this case is either now moot because Judge Bradbury filed an affidavit with the out of Supreme Court saying I'm complying with your decision, or it will certainly become moot on the first Monday of January. So if the court has no further questions, I will end. All right. Thank you. You have one minute for your rebuttal. Even though you've used it all up, I'm going to give you a minute of his time. Appreciate the consideration. Regarding Justice Eisen's affidavit, I just asked the court to look at the affidavit, compare it to the record. I suggest to you that the affidavit leaves out very significant portions of what really took place and that particularly that he was sitting as the chairman of the judicial council during the prosecutorial phase. He does say he did not participate in the adjudication at the end after the hearing. He does say that. And he did not attend the hearing because he had a cancer operation. That was said. So I just say look at that carefully. Secondly, regarding the issue of mootness, again, here I think the cases are clear that when there are personal rights, constitutional rights involved here. May I interrupt you just for a second? As to the initiation of the proceeding, I heard Mr. Gilmour say that the decision by the judicial council to proceed to trial occurred before Justice Eisen was elected as chief justice and became a member of the judicial council. Is that correct? That is correct. And what role did he play with respect to determination of whether the charges should be brought to trial? I can answer that. The initial proceedings brought against Judge Bradbury regarding this issue of residence occurred the year before and they were concluded. And a letter came out, as you have it in the file, saying thank you very much. You answered the questions. After Judge Eisen became the chairman of the judicial council, I believe it was in September of 2007, a new claim came out against Judge Bradbury saying that the case has been reopened on grounds of new information and inquiries, end quote. And that formed the basis then of the action or the proceedings, the renewed proceedings before the judicial council under the administration of Justice Eisen. Thank you very much. Thank you. The case just argued is submitted, Bradbury v. Eisenman. Thank you for coming from Idaho. And we're concluded for the morning.
judges: Hawkins, McKeown, Bea